# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7886 | **DATE** | 1/4/2001 |
| **CASE TITLE** | | FTC vs. Growth Plus | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Hearing held on Commission's motion for preliminary injunction. **ENTER REPORT AND RECOMMENDATION** recommending that the Commission's motion be granted. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). All matters subject to the referral having been concluded, the referral is hereby terminated.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 0 9 2001 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | 12 |
| | Copy to judge/magistrate judge. | | 1/4/2001 | |
| | | | date mailed notice | |
| JJK | courtroom deputy's initials | 01 JAN -4 PM 3: 02 | JJK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 00 C 7886 |
| vs. | ) | |
| | ) | Chief District Judge Aspen |
| GROWTH PLUS INTERNATIONAL MARKETING, | ) | |
| INC., a Canadian Corporation also d/b/a GROWTH | ) | Magistrate Judge Schenkier |
| POTENTIAL INTERNATIONAL, GPI, and GPIM; | ) | |
| GAINS INTERNATIONAL MARKETING, INC., a | ) | |
| Canadian Corporation, also d/b/a GAINS WEALTH | ) | |
| INTERNATIONAL; PLOTO COMPUTER SERVICES | ) | |
| INC., a Canadian Corporation; VICTOR | ) | |
| THIRUCHELVAM; JESSIE NADARAJAH; KANDAN | ) | |
| NADARAJAH; ARUDCHELVAN NAGAMUTHU; | ) | |
| and JULIE TURGEON, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED

JAN 0 9 2001

## REPORT AND RECOMMENDATION

On December 18, 2000, the Federal Trade Commission ("Commission") initiated this action for injunctive and other relief pursuant to sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57(b), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101, *et seq.* The defendants are a group of Canadian corporations and individuals: "Growth Plus International Marketing, Inc., also doing business as Growth Potential International, GPI, and GPIM ("Growth"); Gains International Marketing, Inc., also doing business as Gains Wealth International ("Gains"); Ploto Computer Services, Inc. ("Ploto"); Victor Thiruchelvam; Jessie Nadarajah, Kandan Nadarajah, Arudchelvam Nagamuthu; and Julie Turgeon. The Commission charges that defendants have engaged in a telemarketing enterprise to deceptively sell Canadian lottery packages to consumers in the United

States without disclosing that those sales are illegal. To the contrary, the Commission alleges that defendants have affirmatively misrepresented that they are authorized under Canadian law to make the sales and that the sales are legal. The Commission further alleges that these defendants have misrepresented to consumers the chances of their success in playing these lotteries, and have engaged in high pressure tactics to persuade customers to participate in the lotteries.

The Commission initially sought a temporary restraining order and a freeze of the defendants' assets. On December 18, 2000, Chief Judge Marvin E. Aspen entered a temporary restraining order with an asset freeze, which was to run through January 5, 2001, at 11:59 p.m.[1] In that order, Chief Judge Aspen also issued a Rule to Show Cause why a preliminary injunction should not issue, and set a hearing on that Rule to Show Cause for January 4, 2001. The matter is now before this Court on a referral from Chief Judge Aspen for a report and recommendation on the issuance of a preliminary injunction.

The Court convened a hearing on the Rule to Show Cause on January 4, 2001. Counsel for the Commission appeared at the hearing, and advised the Court that all defendants except Arudchelvam Nagamuthu have been served with the temporary restraining order and related pleadings: Jessie Nadarajah was served on December 30, 2000, and all other defendants were served on December 21, 2000. Counsel for the Commission indicated that neither the defendants nor any counsel have contacted the Commission since service of the temporary restraining order, and neither defendants nor any counsel on their behalf appeared at the hearing before this Court.

---

[1] The Court has been advised that the Commission is presenting a motion to the Emergency District Judge to extend the temporary restraining order to the end of the day on Monday, January 22, 2001.

The Commission elected not to offer additional evidence in support of its request for a preliminary injunction, choosing instead to rest on the sworn statements and other documents filed in support of the request for a temporary restraining order. Based on the Court's review of the applicable case law and the evidentiary materials offered by the Commission, the Court respectfully recommends that the Commission's request for a preliminary injunction be granted, according to the terms in the proposed order attached as Appendix A. The findings and conclusions that support this recommendation are set forth below:

1.    The Court has subject matter jurisdiction of this case, pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 53(b). The Court further finds it likely that jurisdiction and venue will be appropriate in this Court under 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b), as certain of the alleged conduct by defendants took place within this District (*see, e.g.,* Plaintiff's Exhibit 10).

2.    Section 53(b) of the FTC Act authorizes the FTC to seek preliminary injunctive relief in a "proper case." *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1026-27 (7th Cir. 1988). Cases that involve allegations of "routine fraud" establish the kind of proper case in which the Commission is empowered to seek immediate injunctive relief. *Id.* at 1028. The allegations in this case – that the defendants engaged in a scheme involving both concealment of material information and affirmative misrepresentations – constitute the kind of routine fraud for which the Commission is authorized to seek preliminary injunctive relief.

3.    When the Commission seeks an injunction, the "public interest" test applies, which involves two factors: (a) the likelihood that the Commission will ultimately succeed on the merits, and (b) the balance of the equities. *World Travel Vacation Brokers*, 861 F.2d at 1028-29. In considering those two factors, the Court employs a "sliding scale so that the greater the plaintiff's

success on the merits, the less harm she must show in relation to the harm defendant will suffer if the preliminary injunction is granted." *Kinney v. Local 150*, 994 F.2d 1271, 1277 (7th Cir. 1993).

4.    The evidence before the Court at this time demonstrates a strong likelihood that the Commission will prevail on the merits of its claims. Section 5(a) of the FTC Act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a). Under this standard, "[m]isrepresentations of material facts made for the purpose of inducing consumers to purchase services constitute unfair or deceptive acts or practices forbidden by Section 5(a)." *World Travel Vacation Brokers*, 861 F.2d at 1029 (internal quotations and citations omitted). In addition, the omission of material information, even without affirmative falsehood, may lead to a violation of Section 5. *Id.* At bottom, what the Commission must establish is that "the representations, omissions, or practices likely would mislead consumers, acting reasonably, to their detriment." *Id.*

5.    The evidentiary materials at this point establish a strong case that the defendants were guilty of numerous misrepresentations or omissions. For example, (a) the defendants told customers that it was legal for them to sell the lottery tickets in the United States, when it was not; (b) the defendants told customers that they were authorized by the Canadian government to sell lottery tickets, when in fact they were not; (c) the defendants represented to consumers that they had a good chance of winning the lottery because they would playing with a large pool of people, without disclosing that the odds of winning were roughly 1 in 14 million. This information that was misrepresented or concealed plainly was material to the consumers' decisions to purchase the tickets: The knowledge that the sale of the tickets was illegal under federal law and that the "good chance" of winning was in fact a 1 in 14 million shot certainly are the types of information that would likely

affect the decision of whether to participate in the lottery. And, in fact, the Commission has provided sworn statements from several consumers indicating that they would not have purchased the lottery tickets had they known that the sales of tickets were illegal (*see* Plaintiff's Exhibits 9, 10, and 13).

6.     For these same reasons, the Commission has made a strong case that it will likely prevail on the merits of its claim that defendants have violated the Telemarketing Sales Rule, 16 C.F.R. § 310.3(a)(4), which prohibits sellers and telemarketers from making false or misleading statements to induce persons to acquire goods or services.

7.     Turning to the balance of the equities, the Court notes that "[a]lthough private equities may be considered, public equities receive far greater weight." *World Travel Vacation Brokers*, 861 F.2d at 1030 (internal quotations and citations omitted). In this case, the balance of equities weighs heavily in favor of the issuance of preliminary injunctive relief. There is a strong public interest in an immediate halt to illegal sale of lottery tickets accomplished through the use of misleading devices. By contrast, the Court perceives very little private interest in the continuance of such sales pending further proceedings in the case, especially given the unrebutted evidence to date that the defendants are not even authorized within Canada to sell lottery tickets (*see* Plaintiff's Exhibit 20). Taken together, the great weight that is accorded to the public interest in this balancing test and the strong showing that the Commission has made of a likelihood of success lead the Court to conclude that the balancing of equities strongly favors the issuance of the preliminary injunction.

8.     The Court further finds that the Commission has established that it is appropriate to extend the preliminary injunction not only to the corporate defendants, but to the individual defendants who have been served as well. The Commission's evidence shows that the individual

defendants each had major roles in the establishment and operation of the corporate defendants. Victor Thiruchelvam is the director, officer, president, and secretary of Growth; he also has been identified as being involved in certain of the telemarketing enterprises. Jessie Nadarajah is a director of defendants Gains and Ploto. Kandan Nadarajah is a director of Gains and Ploto, and an officer and president of Gains. Julie Turgeon is a director, officer, president, and secretary of Gains.

9. To establish the liability of the individual defendants for the corporate activity, the Commission must show that all individual defendants knew or should have known of the corporate defendants' alleged fraudulent activity. *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 573-74 (7th Cir. 1989). The Commission may make this showing by establishing that the individual defendants either participated directly in the practices or acts alleged, or had the authority to control them: "[a]uthority to control a company can be evidenced by act of involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Id.* at 573.

10. In this case, at least one of the defendants – Mr. Thiruchelvam – was allegedly directly involved in the fraudulent telemarketing activity. Moreover, all the individual defendants occupied roles with the defendant corporations such that they each had reason to know what business activity the companies were authorized to conduct, and what business activity they were in fact conducting. Indeed, that knowledge alone is sufficient to indicate that these defendants should have had knowledge of fraudulent activity: the corporate defendants were engaged in lottery sales, which the evidence thus far indicates they were not even authorized to do in Canada – much less in the

6

United States. Thus, the Court finds that the Commission has established a sufficient basis to extend the preliminary injunction to these individual defendants.[2]

11.    In addition to a preliminary injunction prohibiting the alleged fraudulent activity, the Court finds that the Commission has established entitlement to an asset freeze. If the Commission prevails in this case, restitution would be an appropriate remedy. Thus, the Court has "a duty to ensure that the assets of the corporate defendants [are] available to make restitution to the injured customers." *World Travel Vacation Brokers*, 861 F.2d at 1031. Because of the individual defendants' involvement as established by the evidentiary submissions to date, the Court further finds that the freeze of assets properly extends to both the corporate and the individual defendants. The Court further notes that, although most of the defendants were served with the temporary restraining order and related papers on December 21, two weeks ago, none of the defendants has appeared in the case, and none of the defendants has completed and submitted the financial statement required by paragraph 5 of the temporary restraining order. In the absence of compliance by these defendants with that term of the temporary restraining order, the Court is not at this time in a position to determine whether some remedy short of a total freeze of corporate and individual assets is appropriate. *See World Travel Vacation Brokers, Inc.*, 861 F.2d at 1031 (upholding the freezing of assets, noting that "because neither the individual nor corporate defendants have complied with the court's order to disclose relevant financial information, it is extremely difficult to discern if a less drastic remedy would have been appropriate").

---

[2] This same reasoning applies equally to Arudchelvam Nagamuthu, a director of Gains. However, because this defendant has not yet been served, the Court's findings do not at this time extend to him.

For the foregoing reasons, the Court respectfully recommends that the Commission's motion for a preliminary injunction with asset freeze and other relief be granted as against the defendants who have appeared to date: Growth Plus International Marketing, Inc., Gains International Marketing, Inc., Ploto Computer Services, Inc., Victor Thiruchelvam, Jessie Nadarajah, Kandan Nadarajah, and Julie Turgeon. The Court recommends that this preliminary injunction be issued in the form attached to this recommendation as Appendix A. The Court is mindful that, although they have been served, these defendants have not yet appeared, and thus the Court's recommended injunction is without prejudice to these defendants' right to seek to amend or dissolve the preliminary injunction for good cause shown if they appear in the case at a later date.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver or the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *See Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: January 4, 2001**

8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>GROWTH PLUS INTERNATIONAL MARKETING,<br>INC., a Canadian Corporation, also d/b/a )<br>GROWTH POTENTIAL INTERNATIONAL, GPI,<br>and GPIM, )<br><br>GAINS INTERNATIONAL MARKETING, INC., )<br>a Canadian Corporation, also d/b/a<br>GAINS WEALTH INTERNATIONAL, )<br><br>PLOTO COMPUTER SERVICES, INC., )<br>a Canadian Corporation, )<br><br>VICTOR THIRUCHELVAM, )<br><br>JESSIE NADARAJAH, )<br><br>KANDAN NADARAJAH, )<br><br>ARUDCHELVAM NAGAMUTHU, and )<br><br>JULIE TURGEON, )<br><br>Defendants. )  | Civil Action No. 00 C 7886<br><br>Judge Aspen<br><br>Magistrate Judge Schenkier |

## ORDER FOR PRELIMINARY INJUNCTION WITH ASSET FREEZE AND OTHER RELIEF AGAINST GROWTH PLUS INTERNATIONAL MARKETING, INC., GAINS INTERNATIONAL MARKETING, INC., PLOTO COMPUTER SERVICES, INC., VICTOR THIRUCHELVAM, JESSIE NADARAJAH, KANDAN NADARAJAH, AND JULIE TURGEON

The Court, having granted the *Ex Parte* Motion for a Temporary Restraining Order with

Asset freeze, and other relief, filed by Plaintiff, the Federal Trade Commission ("FTC" or

"Commission"); having entered an Order to Show Cause Why a Preliminary Injunction Should Not Issue; all defendants except Arudchelvam Nagamuthu having been served with the Order; the Magistrate Judge having convened a hearing on January 4, 2001, at which none of the served defendants appeared; and having considered the submissions of the Commission and the January 4, 2001 Report and Recommendation of the Magistrate Judge, and now being otherwise advised fully of the premises hereby finds:

1.    This Court has jurisdiction over the subject matter of this case and there is good cause to believe it will have jurisdiction over all parties hereto;

2.    There is good cause to believe that the Commission will ultimately succeed in establishing that Defendants Growth Plus International Marketing, Inc., also d/b/a Growth Potential International, GPI, and GPIM, Gains International Marketing, Inc., also d/b/a Gains Wealth International, Ploto Computer Services, Inc., Victor Thiruchelvam, Jessie Nadarajah, Kandan Nadarajah, and Julie Turgeon have engaged in and are likely to engage in the future in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" (the "Rule"), 16 C.F.R. Part 310, and that the Commission is therefore likely to prevail on the merits of this action;

3.    There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution will occur from the sale, transfer, or other disposition or concealment by Defendants of their assets absent continuation of the asset freeze; and

4.    Weighing the equities and considering the Commission's likelihood of ultimate success, a Preliminary Injunction Order with asset freeze and other equitable relief against the corporate and individual defendants is in the public interest.

## DEFINITIONS

For the purpose of this preliminary injunction order, the following definitions shall apply:

1.      "Defendant" or "Defendants" means Growth Plus International Marketing, Inc., also d/b/a Growth Potential International, GPI, and GPIM, Gains International Marketing, Inc., also d/b/a Gains Wealth International, Ploto Computer Services, Inc., Victor Thiruchelvam, Jessie Nadarajah, Kandan Nadarajah, and Julie Turgeon, individually, and their successors, assigns, officers, agents, servants, employees, and those persons in active concert or participation with them, including, but not limited to LOTONET INTERNATIONAL, LTD, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device; or any of them.

2.      "Corporate Defendants" means Growth Plus International Marketing, Inc., also d/b/a Growth Potential International, GPI, and GPIM, Gains International Marketing, Inc., also d/b/a Gains Wealth International, and Ploto Computer Services, Inc.

3.      "Asset" or "assets" means all real and personal property of any Defendant, or held for the benefit of any Defendant, including, but not limited to "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the Uniform Commercial Code), and all cash, wherever located.

4.      "Material" means likely to affect a person's choice of, or conduct regarding, goods or services.

5.      "Person" or "persons" means any individual, group, unincorporated association, limited or  general partnership, corporation, or other business entity.

3

6.     The term "document" or "documents" means any materials listed in Federal Rule of Civil Procedure 34(a) and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, into reasonably usable form through detection devices. A draft or nonidentical copy is a separate document within the meaning of the term.

## I.

## CEASE AND DESIST

**IT IS THEREFORE ORDERED THAT** Defendants are hereby restrained and enjoined from:

A.     Promoting, offering for sale, or selling, directly or indirectly, tickets, chances, interests, or registrations in any lottery to residents of the United States of America ("U.S.") ; and

B.     Purchasing or registering any ticket, chance or interest in any lottery for any U.S. resident person, group of persons, or entity.

C.     Misrepresenting or omitting any fact material to a consumer's decision to purchase Defendants' products or services in connection with the advertising, marketing, proposed sale, or sale of any product or service ; and

D.     Violating or assisting others to violate any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, including, but not limited to:

1.     Making a false or misleading statement to induce any person to pay for any good or service in violation of Section 310.3(a)(4) of the Rule, 16 C.F.R. § 310.3(a)(4); and

2. Failing to disclose, in a clear and conspicuous manner, before a customer pays for any goods or services, all material restrictions, limitations, or conditions to receive those goods or services, in violation of Section 310.3(a)(1)(ii) of the Rule, 16 C.F.R. § 310.3(a)(1)(ii).

## II.

## ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants, except as provided in Section III below, as stipulated by the parties, or as directed by further order of the Court, are hereby restrained and enjoined until further order of this Court, from:

A. Transferring, converting, encumbering, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, or otherwise disposing of any funds, property, artwork, coins, precious metals, jewelry, contracts, shares of stock, or other assets, wherever located, that are (1) owned or controlled by any Defendant, in whole or in part; or (2) in the actual or constructive possession of any Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any Defendant, or any other corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant, including, but not limited to, any assets held by or for any Defendant in any account at any bank or savings and loan institution, or with any credit card processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company,

precious metal dealer, or other financial institution of any kind either within or outside the United States;

B.    Opening or causing to be opened any safe deposit boxes or storage facilities titled in the name of any Defendant, or subject to access by any Defendant or under any Defendant's control, without providing Plaintiff prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Section; and

C.    Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant.

Notwithstanding the asset freeze provisions of Paragraphs II. A - C above, and subject to prior written agreement with Plaintiff, Defendants Victor Thiruchelvam, Jessie Nadarajah, Kandan Nadarajah, and Julie Turgeon may, upon compliance with Section V, pay from their individual personal funds reasonable, usual, ordinary, and necessary living expenses, subject to prior written agreement with Plaintiff.

The assets affected by this Section shall include both existing assets and assets acquired after the issuance of this Order.

### III.

### REPATRIATE ALL FOREIGN ASSETS

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, if not already performed, within three (3) business days following entry of this Order, Defendants shall:

A.     Repatriate to the United States all funds and assets in foreign countries held

either: (1) by them; (2) for their benefit; or (3) under their direct or indirect

control, jointly or singly; and

B.     Provide Plaintiff with a full accounting of all funds and assets outside of the

territory of the United States held either: (1) by them; (2) for their benefit; or (3)

under their direct or indirect control, jointly or singly. The full accounting shall

include providing Plaintiff access to Defendants' records and documents held by

financial institutions outside the territorial United States, by signing the Consent

to Release Financial Records attached as Appendix A to the Temporary

Restraining Order.

## IV.

## MAINTAIN RECORDS AND REPORT NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants are hereby restrained and enjoined from:

A.     Failing to make and keep books, records, accounts, bank statements, current

accountants' reports, general ledgers, general journals, cash receipt ledgers and

source documents, documents indicating title to real or personal property, and any

other data which, in reasonable detail, accurately and fairly reflect the transactions

and dispositions of the assets of Defendants;

B.     Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise

disposing of, in any manner, directly or indirectly, any books, records, tapes,

discs, accounting data, checks (fronts and backs), correspondence, forms,

advertisements, brochures, manuals, electronically stored data, banking records,

customer lists, customer files, invoices, telephone records, ledgers, payroll

records, or other documents of any kind, including information stored in computer-maintained form (such as electronic mail), in their possession, custody or control; and

C.     Creating, operating, or exercising any control over any new business entity, including any partnership, sole proprietorship, or corporation, without first providing Plaintiff with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## V.

## COMPLETE AND FILE FINANCIAL STATEMENT

**IT IS FURTHER ORDERED** that each Defendant named in the title of this Order shall have a continuing duty to provide this Court and serve upon counsel for the Commission with updated financial statements, on the forms served with the Temporary Restraining Order as directed in the Temporary Restraining Order.

## VI.

## DUTIES OF THIRD PARTIES HOLDING DEFENDANTS' ASSETS

**IT IS FURTHER ORDERED** that pending determination of Plaintiff's request for a permanent injunction, that any of the entities named in Section II. A above, maintaining or having custody or control of any account or other asset of any Defendant, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant, or that at any time since May 1996, has maintained or had

custody of any such account or other asset, and which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

A.   Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any of the assets, funds, or other property held by, or under its control, on behalf of any Defendant in any account maintained in the name of or for the benefit of any Defendant, in whole or in part, except in accordance with any further order of the Court; and

B.   Deny Defendants access to any safe deposit boxes or storage facilities that are either titled in the name, individually or jointly, of any Defendant, or otherwise subject to access by any Defendant.

C.   Within five (5) business days of the date of service of this Order provide to counsel for Plaintiff a certified statement setting forth:

1.   The identification of each account or asset titled in the name, individually or jointly, of any Defendant, or held on behalf of, or for the benefit of, any Defendant, including all trust accounts managed on behalf of any Defendant or subject to any Defendant's control;

2.   The balance of each such account, or a description and appraisal of the value of such asset, as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed since May 1996, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

3. The identification and location of any safe deposit box or storage facility that is either titled in the name individually or jointly, of any Defendant, or is otherwise subject to access or control by any Defendant.

D. Allow representatives of Plaintiff immediate access to inspect and copy any records or other documents pertaining to such account or asset, including, but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

The assets and funds affected by this Section shall include both existing assets and assets acquired after the issuance date of this Order.

## VII.

## DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each of their corporations and corporations' employees, subsidiaries, affiliates, directors, officers, employees, agents, and independent contractors. Within twenty-one calendar days following service of this Order by Plaintiff, Defendants shall file with this Court and serve on Plaintiff, an affidavit identifying the names, titles, addresses, and telephone numbers of the

persons and entities Defendants have served with a copy of this Order in compliance with this provision.

## VIII.

## SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by first class mail, overnight delivery, facsimile, electronic mail, or personally, by employees or agents of Plaintiff, upon any bank, savings and loan institution, credit union, financial institution, brokerage house, escrow agent, retirement fund custodian, money market or mutual fund, title company, commodity trading company, common carrier, storage company, trustee, credit card processing agent, commercial mail receiving agency, mail holding or forwarding company, Internet service provider, or any other person, partnership, corporation, or legal entity that may be in possession of any documents, records, assets, property, or property right of any Defendant, and any other person, partnership, corporation, or legal entity that may be subject to any provision of this Order.

## IX.

## CONSUMER REPORTING AGENCIES

**IT IS FURTHER ORDERED** that, pursuant to Section 604 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(b), any consumer reporting agency may furnish a consumer or credit report concerning any Defendant to Plaintiff.

# X.

## JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

No Security is required of any agency of the United States for the issuance of a restraining order. Fed. R. Civ. P. 65(c).

Dated _____          _____
                                    United States District Judge